HAROLD LEE LLOYD *v.* STATE OF INDIANA.

[No. 1-1174A169. Filed October 14, 1975. Rehearing denied November 14, 1975. Transfer denied May 10, 1976.]

*Frederick J. Graf, Martz, Beattey, Hinds & Wallace,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney Gentral, for appellee.

LYBROOK, J.—Defendant-Appellant Harold Lee Lloyd was tried by jury and convicted of first degree burglary. IC 1971, 35-13-4-4, Ind. Ann. Stat. § 10-701 (Burns 1956). His appeal presents the following issues for review:

(1) Whether the trial court erred in overruling defendant's motion to suppress evidence seized during a search incident to arrest.

(2) Whether there were, in defendant's words, "plea bargaining abuses" resulting in the denial to defendant of "equal justice under law".

(3) Whether the trial court erred in failing to exclude from the jury's consideration evidence of a prior inconsistent written statement used by the State to impeach one of its witnesses.

(4) Whether defendant's conviction is supported by sufficient evidence.

We affirm.

The rural Shelby County residence of Ethel Plummer was burglarized on February 29, 1972, sometime after the hour of 11:30 A.M. At approximately 2:00 P.M. on that same date,

defendant was in the vicinity driving an automobile registered to his mother and occupied by himself, Eugene Frederick and Thomas Merrill McDuff, all strangers to the area. An area resident communicated the fact of the presence of the automobile to Hancock County Sheriff Bob Sebastian who was at that time investigating other burglaries which had been reported in the area that day. An investigative stop of defendant's automobile by Sebastian culminated in a search and seizure of articles which were subsequently determined to have been taken from the Plummer residence.

## I.

The first question which must be addressed is that of the reasonableness of the initial intrusion of stopping defendant's automobile. At the hearing on the motion to suppress, Sheriff Sebastian admitted that defendant did not commit a misdemeanor in his presence. Upon further examination of the transcript of the hearing, it also becomes apparent that Sebastian at that time lacked probable cause to believe that defendant had committed a felony. However, the absence of probable cause to effectuate a formal arrest is not determinative of the question of the reasonableness of an investigatory stop. See, *Williams* v. *State* (1974), 261 Ind. 547, 307 N.E.2d 457; *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738; *State* v. *Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874; *Bryant* v. *State* (1973), 157 Ind. App. 198, 299 N.E.2d 200.

In *Caine* v. *State* (1975), 163 Ind. App. 381, 324 N.E.2d 525, Judge Lowdermilk collected from the foregoing cases various statements descriptive of the guidelines against which the actions of an officer must be judged:

"In *Luckett, supra,* our Supreme Court stated, 284 N.E.2d at page 741:

'. . . [I]t appears to be well settled that there is nothing *automatically* unconstitutional in subjecting citizens to a brief detention under circumstances where probable cause

for a formal arrest is lacking. . . . The constitutionality of such detention depends solely upon the reasonableness of the action taken by the police officer. . . .' (Original emphasis.)

"The court went on to quote *State* v. *Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874 to establish a standard applicable to such contentions:

'In order to determine the reasonableness of the intrusion into defendant's privacy by the police conduct in stopping the car we must examine the *facts known to the officers at the time they stopped the car.* . . .' (Original emphasis.)

"The Supreme Court then stated the question before them as follows:

'Thus, the question before this Court is whether the facts known to Officer Jackson at the time he stopped the car were sufficient *to* warrant a man of reasonable caution in the belief that an investigation was appropriate. . . .'

"The court went on to hold that the reasonableness of any investigation conducted during a period of brief detention is a matter to be decided on a case by case basis and that the detention there involved was proper. Finally, the court determined that *after* the car had been stopped and the officer observed some watches on the back seat there was *probable cause* to arrest the defendant.

"In *Bryant, supra,* this court (Third District) recognized: '. . . a police officer may, in *appropriate circumstances and in an appropriate manner,* approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. . . .' (Original emphasis.) 299 N.E.2d at 203." See also, *Fingers* v. *State* (1975), 164 Ind. App. 438, 329 N.E.2d 51; *Smith* v. *State* (1975), 163 Ind. App. 425, 324 N.E.2d 276.

Applying these principles to the case at bar, we find no constitutional infirmity in the initial intrusion of stopping defendant's vehicle. Though Sebastian lacked knowledge of the break-in at the Plummer residence, he was in the area investigating two other reported burglaries. Defendant and his companions were strangers to the area. Further, Sebastian had been advised by the Sheriff of Shelby County that an automobile matching the description

of that driven by defendant was being sought in connection with the commission of a felony at an earlier date.

While we do not intend to condone the wholesale stopping of strange vehicles following the commission of a felony in a rural area, we believe that the existing circumstances, coupled with the information received from the Sheriff of Shelby County, justified a brief detention of defendant's automobile for investigatory purposes.

The next question to be addressed is whether upon detention of defendant's automobile Sebastian acquired probable cause to effectuate an arrest, that is whether the facts and circumstances within his knowledge were sufficient to warrant a prudent man to believe that defendant had committed an offense. *Beck* v. *Ohio* (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142; *Thurman* v. *State* (1974), 162 Ind. App. 267, 319 N.E.2d 151; *McGowan* v. *State* (1973), 156 Ind. App. 344, 296 N.E.2d 667.

Upon stopping the automobile, Sebastian approached the driver's door and requested that defendant produce his operator's license and registration. Thereafter, Sebastian asked defendant and his companions to step from the vehicle. As Frederick exited the passenger door of defendant's vehicle, he was observed putting what appeared to be items of jewelry "down his pants" by a person accompanying Sebastian. This information was communicated to Sebastian who himself then observed items of jewelry lying on the front seat of defendant's automobile.

With this development, we are of the opinion that at that moment the facts and circumstances within Sebastian's knowledge were sufficient to warrant a belief that a felony had been committed. Accordingly, defendant and his companions were properly subjected to formal arrest.

The final question relevant to this issue is the reasonableness of the search and seizure conducted incident to the arrest. The propriety of the search of the persons of defendant

and his companions cannot be questioned. See, *Sizemore* v. *State* (1974), 159 Ind. App. 549, 308 N.E.2d 400, cert. den. 420 U.S. 909, 95 S.Ct. 827, 42 L.Ed.2d 838. Following discovery of the items of jewelry on Frederick's person and in plain view on the front seat of the automobile, Sebastian would have had reason to believe that the automobile contained articles which he was entitled to seize. Therefore, a warrantless search of the vehicle was proper. *Carroll* v. *United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

For the foregoing reasons, we find that defendant's arrest and the search and seizure incident thereto were lawful. The trial court therefore did not err in overruling defendant's motion to suppress.

## II.

Defendant and his companions, Frederick and McDuff, were indicted for first degree burglary and theft. Prior to trial, Frederick and McDuff withdrew their pleas of not guilty, entered bargained pleas of guilty to the offense of entering to commit a felony and received suspended sentences. Frederick thereafter appeared as a witness for the State at trial.

Defendant contends that his conviction should be reversed because the jury received "tainted, coerced testimony from a self-interested alleged accomplice of defendant Lloyd, there being given no explanation for the apparent selective plea bargaining with but two (2) of the three (3) original co-defendants."

Promises of leniency offered by the State to an accomplice in exchange for his trial testimony do not render him incompetent. Rather, they affect only his credibility. *Maynard* v. *State* (1973), 158 Ind. App. 260, 302 N.E.2d 520. With respect to defendant's conception that he was singled out for what he feels to be cruel and unusual punishment, our only available response is that such an assertion wholly fails to constitute a ground for relief.

## III.

When called as a witness on behalf of the State, Frederick testified that defendant was neither present during nor had prior knowledge of the burglary at the Plummer residence. Thereupon, the prosecuting attorney properly sought to impeach Frederick's credibility with the aid of a prior written statement in which Frederick had described defendant's particpation in the burglary. See, IC 1971, 34-1-14-15 (Burns Code Ed.) ; *King* v. *State* (1973), 260 Ind. 422, 296 N.E.2d 113. Frederick acknowledged giving the prior statement and further admitted stating therein that defendant was present at the scene of the crime. However, when the prosecutor read passages from the statement describing defendant's participation, Frederick testified that he did not remember making the particular statements contained in such passages.

Defendant's objection to the use of Frederick's statement on the ground that it constituted inadmissible hearsay must be rejected. In *Patterson* v. *State* (1975), 263 Ind. 55, 324 N.E.2d 482, our Supreme Court re-considered the application of the hearsay doctrine to proof of prior inconsistent statements of witnesses present and testifying in court. The conclusion reached was that the prior statements did not fall within the accepted definition of hearsay since the out-of-court asserters were present and available for cross examination. Thus, in such circumstances, prior inconsistent statements are received as substantive evidence. Accord, *Torrence* v. *State* (1975), 263 Ind. 202, 328 N.E.2d 214.

## IV.

Pursuant to the holdings of *Patterson* and *Torrence,* the factual assertions in Frederick's prior statement might be considered in determining defendant's guilt. At this juncture, however, there arises the question of whether the contents of the prior statement were in

fact received in evidence. In *Patterson,* neither witness denied making the statements. In *Torrence,* the witness admitted making the statement but repudiated its contents. Further, in both cases, the prior statements were offered and received into evidence. In the case at bar, Frederick admitted to making a prior statement inconsistent with his trial testimony and generally admitted that the statement implicated defendant as being present at the scene of the burglary during its commission. However, when confronted with the contents of the statement, Frederick testified that he was unable to remember making those portions of the statement descriptive of the defendant's involvement. Given Frederick's non-affirmative responses, it is elementary that proof of the contents of the statement required either extrinsic evidence that Frederick did in fact make the allegations in the statement or introduction of the written statement itself into evidence; however, the State did neither in the instant case. Therefore, the factual contents of Frederick's statement are not in evidence and may not be considered in determining the sufficiency of the evidence to sustain defendant's conviction. However, Frederick's general admission that his prior statement placed defendant at the scene of the crime during its commission is, pursuant to the guidelines of *Patterson,* substantive evidence which may have been considered in determining defendant's guilt.

The facts most favorable to the State reveal that the rural Plummer residence was burglarized sometime after the hour of 11:30 A.M. At approximately 2:00 P.M., defendant and his companions were observed stopped in the vehicle being driven by defendant in front of a house located approximately one and one-half miles from the burglarized premises. Shortly thereafter, items taken from the Plummer residence were discovered in the passenger compartment and in the locked trunk of the defendant's vehicle.

Decisions reversing convictions of entering to commit a felony or burglary cited and relied upon by defendant are distinguishable from the instant case. In *Chapman* v. *State* (1975), 163 Ind. App. 137, 321 N.E.2d 863, we held that evidence of possession of stolen property *the day following* an unlawful entry would not support a conviction of entering to commit a felony in the absence of evidence placing the defendant at or near the scene of the crime. In *Finch* v. *State* (1967), 249 Ind. 122, 231 N.E.2d 45, the defendant was found approximately one and one-half miles from the burglarized premises *nine and one-half hours* after commission of the crime and in possession of goods matching the general description of those taken. In reversing the defendant's conviction of second degree burglary, the court appears to have placed primary importance on the lack of evidence positively identifying the goods found in defendant's possession as being those actually stolen. Finally, in *Melvin* v. *State* (1968), 249 Ind. 351, 232 N.E.2d 606, the defendant was observed walking near a cash register sitting in an alley next to a shop which appeared to have been unlawfully entered. The defendant was a resident of the neighborhood. In the absence of any evidence that the defendant had been in possession of the cash register and in the further absence of evidence connecting the cash register with the shop, it was determined that the evidence was insufficient to sustain a conviction of entering to commit a felony.

In contrast to *Finch* and *Melvin*, the goods found in defendant's automobile in the case at bar were conclusively identified as having been removed from the Plummer residence. Further, defendant's proximity to the scene of the crime less than three hours from the earliest time at which the burglary could have been committed renders *Chapman* wholly inapplicable.

In our opinion, defendant's possession of the stolen goods in close proximity in both time and distance to the burglar-

ized premises coupled with Frederick's admission placing defendant at the scene of the burglary during its commission is sufficient evidence from which the jury could have inferred beyond a reasonable doubt that defendant either himself broke and entered the Plummer residence with the intent to commit a felony or participated as an accomplice. See, IC 1971, 35-1-29-1 (Burns Code Ed.).

Defendant having failed to demonstrate reversible error in the trial proceedings, his conviction must be and is hereby affirmed.

Affirmed.

Robertson, C.J., and Lowdermilk, J., concur.

NOTE.—Reported at 335 N.E.2d 232.