LARRY SANSOM AND JACK K. MURPHY, JR. *v.*
STATE OF INDIANA.

[No. 3-675A116. Filed September 29, 1976. Rehearing denied November 10, 1976. Transfer granted September 15, 1977.]

John M. Lyons, of Valparaiso, for appellants.

Theodore L. Sendak, Attorney General, K. Richard Payne, Deputy Attorney General, for appellee.

HOFFMAN, J.—Larry Sansom and Jack K. Murphy, Jr. defendants- appellants were convicted by a jury of the crimes of second degree burglary, IC 1971, 35-13-4-4 (Burns Code Ed.); automobile banditry, IC 1971, 35-12-2-1 (Burns Code Ed.); and theft, IC 1971, 35-17-5-3 (Burns Code Ed.). After receiving judgments of appropriate sentences for each conviction defendants brought this appeal claiming they were improperly accountable for a lesser included offense and that their convictions were not supported by sufficient evidence.

The record before us discloses that on January 18, 1974, one Hank Kopkey, the proprietor of the Kopkey Fur House in Winamac, Indiana, upon opening his establishment for the day, discovered that 411 mink pelts worth between $8 and $18 each, and 186 fox pelts averaging approximately $25 each, were missing from the drying room on the second floor. Kopkey's further inspection revealed that a hole had been ripped in the stairwell roof, high-powered ammunition was out of the counter and "in neat piles on the floor"; and that all of his mink pelts were "gone with the exception of an occasional mink here and there, maybe six or eight on the way downstairs." Upon viewing the garage portion of the building he discovered a broken lock and automobile tracks in the sawdust floor.

After notifying the police Kopkey contacted various fur dealers relative to the furs missing from his establishment and asked them to be on the alert for pelts from his area. Through one of these contacts, on January 25, 1974, the Mis-

souri State Highway Patrol was advised that some of the Winamac furs were being sold to the Markham Fur Co. in Advance, Missouri. As a result, two patrolmen were sent to intercept Murphy and Sansom while they were attempting to sell furs to Mr. Markham. They observed "253 fox pelts stacked on the ground" and 106 mink pelts in the back seat of a 1973 black Monte Carlo Chevrolet bearing Indiana license plates. Appellants Murphy and Sansom explained that they were trading locally, showing the patrolmen numerous mink pelts in the trunk of the car. As the patrolmen took appellants into custody, Sansom disclosed that there was $673 in cash "under the floor mat on the passenger's side up near the fire wall" and asked that the money be retrieved. When asked where they obtained the money, appellants "stated it had come from fur sales in the area." Several days later, on January 29, 1974, Detective Beech of the Indiana State Police traveled to Advance, Missouri, and retrieved Murphy, Sansom, the fur pelts, the money, the automobile and several other items.

At trial, testimony was heard from one Jake Nice, a resident of Winamac, to the effect that he had skinned animals at the Kopkey Fur House for approximately 24 years. He identified certain furs retrieved from Advance, Missouri, as having been prepared by himself. He also identified a particular type of wire stretcher and string used at the Kopkey establishment.

Addressing first the question of whether there was sufficient evidence to support the conviction of appellants, it should be noted that this court may consider only that evidence most favorable to the State together with all logical and reasonable inferences which may be drawn therefrom. *McAfee* v. *State* (1973), 259 Ind. 687, 689, 291 N.E.2d 554. Possession of distinctive fur pelts by individuals acquainted with the ransacked premises cannot be claimed to be insufficient. *Rance v. State* (1975), 165 Ind. App. 153, 331 N.E.2d 40. *O'Hara* v. *State* (1975), 165 Ind. App. 11,

330 N.E.2d 396. Rather, it has been shown that substantial circumstantial evidence explaining the purloining of furs was available to support an inference of guilt beyond a reasonable doubt to the offenses charged. *Gregory* v. *State* (1972), 259 Ind. 295, 286 N.E.2d 666.

Accordingly we are presented with the second asserted error of whether there was an impropriety in the sentence for the lesser included offense. Sansom and Murphy contend that second degree burglary is a lesser included offense of automobile banditry citing *Hatfield; West* v. *State* (1961), 241 Ind. 225, 171 N.E.2d 259. However, it should be recognized that there has been a reduction in the penalty for the latter.[1] Considering this change in conjunction with the rule that the severity of the penalty fixes the magnitude of the crime, we conclude that second degree burglary is now the greater offense. *Sutton* v. *State* (1966), 248 Ind. 1, 221 N.E.2d 430. As such it would be erroneous to assert that second degree burglary is a lesser included offense on the basis of *Hatfield* alone. *See,* IC 1971, 35-1-39-1 (Burns Code Ed.). In *Sutton* v. *State, supra,* our Supreme Court, at 4-5 of 248 Ind., at 432 of 221 N.E.2d, with regard to an analogous situation, stated:

"Auto banditry consists of the commission or attempted commission of a *felony* having at or near the place an automobile for the purpose of escaping, etc.; yet a felony includes murder, and although one may be charged with auto banditry in the commission of a murder and found guilty of both murder and auto banditry, certainly it would be absurd to contend that the offense of murder is a 'lesser' included offense in auto banditry. In such a case, the court must sentence the defendant to the greater offense, namely murder."

It would likewise be incongruous for this court to hold that automobile banditry is a lesser included offense of

1. Prior to the 1961 amendment the sentence for automobile banditry was "not less than ten [10] years nor more than twenty-five [25] years." Presently such sentence is "not less than one [1] year nor more than five [5] years." *See,* Ind. Ann. Stat., § 10-4710 (Burns 1956 Repl.); IC 1971, 35-12-2-1 (Burns Code Ed.).

second degree burglary. For it to be necessarily included in the greater offense, the lesser offense must be such that it is impossible to commit the greater without first having committed the lesser. *Watford* v. *State* (1957), 237 Ind. 10, 143 N.E.2d 405.

However since the record discloses that in the charging affidavit second degree burglary was the felony subsidiary to the automobile banditry charge, it is clear that the same criminal act supports both offenses. Under these circumstances the judgment and sentence arising from the automobile banditry must be vacated. *Coleman* v. *State* (1975), 264 Ind. 64, 339 N.E.2d 51; *Hudson* v. *State* (1976), 265 Ind. 302, 354 N.E.2d 164.

The judgments and sentences of the trial court on the convictions of second degree burglary and theft are affirmed. This cause is remanded to the trial court with instructions to vacate the judgment and sentence on the conviction of automobile banditry, consistent with this opinion.

Staton, P.J. and Garrard, J., concur.

NOTE.—Reported at 354 N.E.2d 336.